[No. 6988–1–II. Division Two. October 11, 1983.]

RONALD R. HUDSON, *Appellant*, v. SUSAN HUDSON, *Respondent.*

*Gary L. Brown,* for appellant.

*Kim Churchill,* for respondent.

WORSWICK, A.C.J.—Ronald Hudson appeals an order of the Kitsap County Superior Court requiring him to transfer to his former wife, Susan, the physical custody of their three minor children. Susan was awarded custody by the Indiana courts but Ronald took the children with him to Spain. After he had returned to this state, Susan brought an enforcement proceeding here under RCW 26.27.150,[1] a section of the Uniform Child Custody Jurisdiction Act.

Ronald has raised two minor procedural questions which we have considered and find without merit. The dispositive issue arises out of his contention that the courts of this state should not honor the Indiana determination because Indiana lacked in personam jurisdiction over him and, therefore, the Indiana adjudication violated his due process rights. He earlier made the same contention in Indiana where he appeared specially and litigated the issue completely. *In re Marriage of Hudson,* ___ Ind. App. ___, 434 N.E.2d 107 (1982), *cert. denied,* ___ U.S. ___, 75 L. Ed. 2d 433, 103 S. Ct. 1187 (1983).[2]

Indiana has also adopted the Uniform Child Custody Jurisdiction Act (Ind. Code Ann. §§ 31–1–11.6–6 *et seq.*

---

[1]RCW 26.27.150 provides, in part:

"Filing and enforcement of custody decree of another state. (1) A certified copy of a custody decree of another state may be filed in the office of the clerk of any superior court of this state. The clerk shall treat the decree in the same manner as a custody decree of the superior court of this state. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a court of this state."

[2]Arguably Ronald is precluded from raising these issues here by the doctrine of res judicata. *See* RCW 26.27.120.

(Burns 1980)). Therefore, the question presented is whether the courts of this state are mandated by RCW 26.27.130 to recognize the Indiana custody award. That section provides, in relevant part:

> Recognition of out–of–state custody decrees. The courts of this state shall recognize and enforce an initial . . . decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, . . .

We hold that the courts of this state are so mandated. We cannot improve on the opinion of the Indiana Court of Appeals in *In re Marriage of Hudson, supra.* We adopt the following excerpts of that opinion as our ratio decidendi:

Respondent–husband Ronald R. Hudson appeals from a trial court's judgment in a dissolution proceeding which 1) dissolved the parties' marriage 2) distributed the marital property and 3) awarded custody of their three children to Petitioner–wife Susan C. Hudson. Specifically Ronald contends the trial court lacked jurisdiction over all three matters claiming 1) Susan did not satisfy the six month's residency requirement for obtaining a dissolution decree; 2) Susan did not maintain continuous residency in Indiana and therefore the trial court lacked jurisdiction to distribute the marital property; and 3) the trial court did not possess jurisdiction to award custody of the parties' children under the Uniform Child Custody Jurisdiction Law and any such assertion of jurisdiction would violate his due process rights. We hold the trial court was vested with jurisdiction to dissolve the marriage but lacked jurisdiction to distribute the bulk of the marital assets. We additionally find that, at the time Susan's petition for dissolution was filed, the trial court was vested with jurisdiction to determine custody of the parties' children, given Susan's and the children's significant connections with Indiana. We therefore affirm in part, reverse in part and remand for further proceedings.

## FACTS

We initially note that a transcript of the hearing on Susan's petition was not certified for our consideration on appeal. Our review of the facts is therefore limited to the pleadings and the transcript of a hearing on Ronald's motion to dismiss for lack of subject–matter and *in personam* jurisdiction.

The facts most favorable to the trial court's judgment are the following. Susan was a life–long resident of Indiana at the time of her marriage to Ronald in January of 1975. The parties were married in Bloomington, Indiana and initially resided there for approximately one and a half years. At the time of their marriage, Susan had custody of Christine, her natural child from a former marriage, whom Ronald legally adopted. Ronald was enlisted in the United States Navy and was transferred to Iceland in mid–1976 where the parties and Christine resided for approximately two and a half years. While living in Iceland, the parties had two children, Thomas and Monique.

In 1978 Ronald was transferred to the State of Washington for a one year program at the University. While Ronald attended school, the parties and their three children resided in Bremerton, Washington for nine months until July of 1979. At that time, Susan returned to her parents home in Indiana and lived there for approximately one and a half months. According to her testimony she returned to Washington in August of 1979 in order to encourage Ronald to seek marriage counseling, to gather some additional personal possessions and to arrange for Ronald to set up a home, separate from her parents, for her and the children in Indiana until their marital difficulties could be worked out. After four months in Washington, Susan returned to Indiana in December of 1979 with the children where she has since resided.

Ronald continuously claimed Oregon as his voting and legal residence. The parties, however, never lived together in Oregon except for a brief period during which they stayed with his parents while they set up housekeeping in

Washington. In January of 1980, Ronald was transferred to a military installation in Rota, Spain. Susan and the children continued to reside in Indiana. On March 12, 1980, Ronald apparently forcibly removed Monique and Thomas from Susan's custody and took them back to Spain where they still resided at the time of the trial court's judgment.

On the same day Ronald seized the two children, which was approximately eight months after Susan's initial return to Indiana, Susan filed a petition for dissolution and child custody in the Vigo Superior Court in Indiana. Ronald was served notice of the proceedings by mail on March 24, 1980. On April 11, 1980 counsel for Ronald appeared and filed a motion to dismiss for lack of subject–matter and *in personam* jurisdiction. After a hearing and after the submission of briefs and memoranda, the trial court denied the latter motion and set the petition for hearing. On July 15, 1980 the trial court entered a decree of dissolution, distributed all the marital property and awarded Susan custody of the three children. Thereafter Susan petitioned for issuance of a rule to show cause stemming from Ronald's alleged failure to relinquish custody of Monique and Thomas and to pay support as had been ordered by the trial court. Ronald moved for a stay of proceedings to enforce the trial court's judgment, under Ind. Rules of Procedure, Trial Rule 62(B)(1), pending a ruling on his motion to correct errors and any further appellate proceedings. Both the trial court and this Court overruled his request for a stay.

Ronald appeals from the trial court's rulings raising the following issues for review:

1) Did the trial court possess jurisdiction to dissolve the parties' marriage?

2) Did the trial court possess jurisdiction to distribute the parties' property?

3) Did the trial court possess jurisdiction under the Uniform Child Custody Jurisdiction Act to award custody of the parties' three children?

4) Did the trial court err in refusing to consider Ronald's motion for a stay of proceedings to enforce its custody and support orders?

DECISION

*Child Custody*

Ronald also contends the trial court lacked jurisdiction to award custody of the parties three minor children. He first argues Indiana did not acquire jurisdiction under the provisions of the Uniform Child Custody Jurisdiction Law (UCCJL). Alternatively, Ronald contends the trial court's exercise of jurisdiction under the UCCJL violated his due process rights. We disagree with both contentions.

A child custody proceeding may be commenced pursuant to the filing of a petition for dissolution. Ind.Code 31–1–11.5–20; *Brokus v. Brokus,* (1981) Ind.App., 420 N.E.2d 1242. Jurisdiction of a child custody proceeding instituted in this manner is determined by reference to the UCCJL, Ind.Code 31–1–11.6–6 *et seq.* IC 31–1–11.5–20.[6] Specifically, the UCCJL provides in pertinent part:

"Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence con-

---

[6]The UCCJL is Indiana's version of the Uniform Child Custody Jurisdiction Act (hereinafter referred to as the Uniform Act) reported at 9 Uniform Laws Annotated 107 (1972 Master ed.)

cerning the child's present or future care, protection, training, and personal relationships; or

(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4)(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a), physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody."

IC 31–1–11.6–3. Ronald first contends none of the above provisions apply in the case at bar and therefore the trial court lacked subject–matter jurisdiction or, more specifically, jurisdiction over this particular controversy. Ronald alternatively contends jurisdiction rests in either Washington or Oregon who are also signatories to the Uniform Act.

Ronald's challenge necessitates a close examination of the UCCJL's jurisdictional provisions. The first and second provisions of the jurisdictional section, quoted above, provide the two major bases for jurisdiction: the "home state" test and the "significant connections" test. Commissioners' Note, 9 Uniform Laws Annotated at 123.[7] These two tests provide alternative bases for jurisdiction. *Id.*

---

[7] IC 31–1–11.6–3, quoted above, is identical to paragraph three of the Uniform Act. We therefore find the Commissioners' notes particularly helpful.

"Home state" is defined in IC 31–1–11.6–2(5) as follows:
"'[H]ome state' means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period."

Neither party claims Indiana was the children's home state, within the statutory definition, at the time Susan's petition was filed on March 12, 1980. Apparently Susan did not bring all three children to Indiana when she initially separated from her husband in July of 1979. Although all three children resided with Susan in Indiana from December of 1979 until Ronald unilaterally removed the two youngest children to Spain on March 12, 1980 it appears the children had not resided in Indiana for the requisite six month period.

Ronald argues either Oregon or Washington would satisfy the home state test at the time the proceedings were begun. We cannot agree. None of the children resided in Oregon except for a brief period while the parties looked for a house in Bremerton, Washington. Furthermore, at the time the proceedings were commenced none of the children had resided in Washington for the past three months. Although *temporary* absences may be included under the home state test, IC 31–1–11.6–2(5), neither party evidenced any intention to return to Washington. Ronald was stationed in Spain and had maintained residency in Oregon, not Washington, and Susan had established residency in Indiana. These latter facts also defeat home state jurisdiction in these foreign states under IC 31–1–11.6–3(a)(1)(B). Under that provision a state which would satisfy the home state test except for the children's absence retains jurisdiction for an additional six months *if a parent continues to reside in that state.* Neither Susan nor Ronald, however,

continued to live in Washington. We must conclude there is no state which qualified as the children's home state at the time the proceedings were commenced in Indiana.

We must therefore turn to the "significant connection" provision of IC 31–1–11.6–3(a)(2). This alternative basis for jurisdiction was specifically drafted to come into play *when the child has been recently removed from his or her home state and the remaining spouse has also moved away.* Commissioners' Note, 9 Uniform Laws Annotated at 123.[8] Under this test, the state with jurisdiction is the one which has maximum access to relevant evidence regarding the child's "present or future care, protection, training, and personal relationships." IC 31–1–11.6–3(a)(2)(B).

In this regard, Ronald appears to propose a strictly quantitative approach, contending Washington is the more appropriate forum since the children and their parents lived there for approximately nine months before the parties left that state in late 1979. At the time of the proceedings, the parties' children, Christine Susan, Thomas Clifford and Monique Ann were approximately 8, 3 and 1½ years old respectively. Although the two youngest children had therefore spent a relatively significant portion of their lives in Washington, we do not believe this fact alone is dispositive.

The significant connection test requires more than a strictly quantitative analysis. The UCCJL was designed to place the issue of custody in the forum most appropriate to determine the best interests of the children. Brigitte M. Bodenheimer, "The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws," 22 Vand.L.Rev. 1207, (1969) (hereinafter referred to as "Bodenheimer"). As explained by the reporter for the Uniform Act who is recognized as a leading

---

[8]As pointed out by the Commissioners, the operation of the significant connection test under such circumstances is also emphasized by the last clause of the home state provision, which provides for jurisdiction under the home state theory only where a parent continues to reside in the home state. IC 31–1–11.6–3(a)(1)(B).

authority on its provisions: "the most significant evidence will have to come from the parents themselves, from other persons who might be entrusted with the care of the child, and from those who can testify about the competence of these persons as custodians." *Id.* at 1223. The Act is expressly concerned not only with the past care of the children, but with their *present* and *future* care. IC 31–1–11.6–3(a)(2)(B). To this extent, the forum should have access to information concerning the effect on the children of materially changed circumstances.

In the instant case, we find it particularly significant that both parties permanently left Washington. At the time of the hearing, neither the parents nor their children had any connection with Washington for at least over four months. The children were not merely physically present in Indiana. Susan was not a temporary visitor to this state, but established residency here with her parents. More significantly, the parties lived in Indiana as a family in the not too distant past for a year and a half, and Christine, the eldest child, lived in Indiana for all but three years of her life. All three children were currently living in Indiana with their mother at their grandparents' home until Ronald's unilateral removal of the two youngest children. Christine attended school here and Thomas attended preschool in Indiana. Indiana therefore had ready access to substantial relevant evidence concerning not only the past conduct of the parties but the present and future circumstances of both Susan and the three children. In contrast, the only evidence concerning Ronald's present and future care of the children existed not in Washington but in Spain, where he had lived with only two of the children for one month at the time of the hearing. We must therefore conclude the children and at least Susan had a significant connection with Indiana and there was substantial evidence concerning the children's *present* and *future care*, protection, training and personal relationships available in this state.

This is not to say that jurisdiction could not have been properly assumed also in Washington. The facts in this case

present a close question.[9] Arguably, the parties' temporary stay in Washington could have satisfied the significant connection test under the Uniform Act. However, custody proceedings were never instituted in Washington and we are not confronted with the problem of competing jurisdiction. Indiana has assumed jurisdiction substantially in conformance with the Uniform Act's provisions and its decree will doubtlessly be accorded binding force in Washington and other states under section 12 of the Uniform Act, if the occasion arises.[10] As suggested in *Bodenheimer, supra* at 1217: "it is less essential to determine with precision *which state* has jurisdiction than to insure that the courts involved cooperate fully in fact–gathering. . . ." (Emphasis in original). The UCCJL provides ample mechanisms for conveying whatever evidence may be available in Washington concerning the family's temporary stay in that state to the Indiana forum. Specifically, IC 31–1–11.6–18 and 19

---

[9]Bodenheimer concedes the resolution under a similar set of circumstances would be uncertain:

"Consider another illustration: suppose the matrimonial home is in state A, and the husband remains there. The wife and children with the consent of the husband move to state B, which is the wife's former home state and where her parents live. They have been in state B for three months when court proceedings are prepared. Relevant facts about the children's present condition and care are in state B along with some of the facts about the qualifications of one of the potential custodians. State A has the information concerning the past relationship between each parent and the children as well as most of the facts about the other potential custodian. Here again, it will be difficult to decide which state has more of the relevant evidence."

*Bodenheimer, supra* at 1222–23. Of course, in the instant case, Ronald did *not* remain in Washington, the last matrimonial home.

[10]Section 12 provides:

"Binding Force and Res Judicata Effect of Custody Decree. A custody decree rendered by a court of this state which had jurisdiction under section 3 of this chapter binds all parties who have been served in this state or notified in accordance with section 5 of this chapter or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law, including the provisions of this chapter."

The UCCJL contains an identical provision at IC 31–1–11.6–12.

provide for taking testimony and requesting hearings and studies in other states when such evidence will shed light on the best interests of the child.[11] We therefore find that under the close circumstances of this case, the trial court did not abuse its discretion in assuming jurisdiction over the custody proceedings.[12]

 Ronald additionally contends the trial court's exercise of jurisdiction over the custody proceedings violated his due process rights since the court lacked *in personam* jurisdiction. We find a petitioner need not demonstrate minimum contacts under *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) between the absent parent and the forum in custody proceedings under the UCCJL. Rather, custody is in effect an adjudication of a child's status, which falls under the status exception of *Shaffer v. Heitner,* (1977) 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683. A court may therefore adjudicate custody under the UCCJL without acquiring personal jurisdiction over an absent party given reasonable attempts to furnish notice of the proceedings.

In this regard Ronald's partial reliance on *In re Marriage of Rinderknecht,* 174 Ind. App. 382, 367 N.E.2d 1128 (1977) is not persuasive. That case recognized both the *in rem* and

---

[11]The Indiana provisions are similar to §§ 18 and 19 of the Uniform Act.

[12]Ronald contends the trial court erred in failing to "make specific findings on the jurisdictional basis for jurisdiction" under the UCCJL, citing *Clark v. Clark,* (1980) Ind.App., 404 N.E.2d 23 for support. Ronald's argument is unclear. No specific findings of fact within the meaning of Ind.Rules of Procedure, Trial Rule 52(A) were requested or required. However, *Clark* does require a *determination* of subject–matter jurisdiction under the UCCJL where a custody dispute has interstate dimensions. *Id.* at 30. The court's order book should affirmatively reflect the court's consideration of the UCCJL by incorporating its conclusion on this issue, although the failure to do so does not automatically result in reversible error. *Id.*

In the instant case, the transcript and record of the proceedings amply demonstrate the trial court's consideration of the UCCJL. The issue was fully briefed and argued before the trial court by both parties. Although the order book does not specifically reflect the court's conclusions in this matter, Ronald's motion to dismiss based on lack of jurisdiction was overruled, a hearing was held regarding custody, and the trial court properly assumed jurisdiction under the UCCJL. The failure to include an order book entry to this effect was not reversible error.

*in personam* nature of claims traditionally raised in dissolution proceedings. It concluded that although under *Shaffer* the minimum contacts standard of *International Shoe* applied to both types of actions, "two levels of minimum contact may be found sufficient to meet the requirements of 'Fair play and substantial justice' which are inherent in the minimum contact test." *In re Marriage of Rinderknecht, supra* at 1134. A determination changing the marital status of the parties, consistently viewed as a proceeding *in rem* is supported by minimum contacts where one of the parties is a resident, although the court is unable to obtain *in personam* jurisdiction over the nonresident spouse. On ·the· other hand, mere residency of one spouse is insufficient to meet the minimum contact requirement for exercising *in personam* jurisdiction in adjudicating the "incidences of marriage." *Id.* at 1135. Ronald appears to contend that the issue of child custody falls in the latter category. However, *Rinderknecht* was only concerned with dissolution and property distribution and did not involve a jurisdictional challenge to the custody award. We must therefore return to an examination of *Shaffer* and other authorities to determine the jurisdictional requirements in custody proceedings.

The first significant case dealing with the issue of state court jurisdiction in custody cases was Justice Traynor's opinion in *Sampsell v. Superior Court,* (1948) 32 Cal.2d 763, 197 P.2d 739. *Sampsell* adopted three alternative bases for jurisdiction—the child's domicile, the child's physical presence or personal jurisdiction over both contestants. This multiple jurisdiction test was widely accepted and incorporated into the Restatement (Second) of Conflict of Laws § 79 (1971). Its adoption, however, resulted in conflicting decrees among competing jurisdictions and a rampant "seize–and–run" approach to custody cases (where a parent, perhaps repeatedly, abducts a child and flees beyond a state's borders to avoid jurisdiction).

The problem was further complicated by the United States Supreme Court's decision in *May v. Anderson,*

(1953) 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221. In its plurality opinion, the Court held Ohio was not *required* to accord full faith and credit to a custody decision rendered in Wisconsin because the latter forum failed to acquire personal jurisdiction over the mother, an Ohio resident. The plurality's opinion in *May* has been severely criticized. For example, several distinguished commentators have complained that an interpretation of *May* requiring personal jurisdiction in custody proceedings "would be a catastrophe." *Brigitte M. Bodenheimer & Janet Neeley–Kvarme,* "Jurisdiction and Child Custody and Adoption after Shaffer and Kulko," 12 U.Cal.D.L.Rev. 229, 243 (1979) (hereinafter cited as *Bodenheimer & Neeley–Kvarme) quoting,* H. Clark, the Law of Domestic Relations 610 (1968). Consequently, the plurality opinion in *May* has enjoyed little acceptance. Rather *May* has been interpreted in accord with Justice Frankfurter's concurring opinion which posits the plurality view as *permitting* states to recognize foreign custody decrees rendered without personal jurisdiction over an absent parent under local law but not *requiring* them to do so under the full faith and credit clause. *Id.* at 535–36, 73 S.Ct. at 844–45 (Frankfurter, J., concurring); *Bodenheimer, supra* at 1232.

The Uniform Act was based on this interpretation of *May. Bodenheimer, supra* at 1232. *In personam* jurisdiction is not required under the Uniform Act. *E.g., Bodenheimer, supra* at 1231–35; *Bodenheimer & Neeley–Kvarme, supra;* Brigitte M. Bodenheimer, "Interstate Custody: Initial Jurisdiction & Continuing Jurisdiction under the UCCJA," 14 Family L.Q. 203 (1981); Note, "Jurisdiction–Uniform Child Custody Jurisdiction Act," 51 Temple L.Q. 139, 148 (1978). Rather, the Uniform Act adopts the traditional *in rem* approach to custody cases, recognizing the character of such proceedings "is entirely different from child support proceedings and other actions involving monetary or property claims," *Bodenheimer & Neeley–Kvarme, supra* at 233, which are more appropriately characterized as *in personam* actions. *See e.g., Kulko v. Superior Court,*

(1978) 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (personal jurisdiction required over absent parent in *support* proceedings). The paramount issue in custody proceedings is the best interests of the *child,* not the feuding parents. The Uniform Act therefore focuses primarily on the state where the child and family, not a parent alone, maintain significant connections.[13]

The Supreme Court's opinion in *Shaffer* recognized the necessity of such specialized jurisdictional rules in *in rem* status proceedings. After concluding the minimum contact standard of *International Shoe* applied to *in personam* and *in rem* actions alike, the Court cautioned: "We do not suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudications of status, are inconsistent with the standard of fairness." *Shaffer v. Heitner, supra,* 433 U.S. at 208 n.30, 97 S.Ct. at 2582 n.30.[14]

█ The Uniform Act's jurisdictional provisions therefore comport with the mandates of *Shaffer.* Where the petitioner has complied with the notice provisions,[15] the assumption of jurisdiction by a forum meeting the jurisdictional provisions of the Uniform Act satisfies the "traditional notions of fair play and substantial justice" *Shaffer, supra, passim,* embodied in the due process clause. *Rinderknecht* adopted this *in rem* status approach to dissolution

---

[13]The Uniform Act and the UCCJL have secured enforcement of custody decrees by sister states, thus avoiding the full faith and credit problem, by incorporating § 12 according foreign decrees binding force. See § 12 quoted in footnote 10, *supra.*

[14]Furthermore, the Supreme Court has apparently recognized the unique nature of similar proceedings and the concomitant necessity for specialized jurisdictional rules in *Stanley v. Illinois,* (1972) 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 where notice by publication was held sufficient to terminate the rights of an unwed father when personal service could not be obtained. In fact, at least one commentator has suggested *Stanley v. Illinois* overruled *May "sub silentio."* H. Clark, Cases and Problems on Domestic Relations 673 (2d ed. 1974).

[15]Uniform Act, §§ 4, 5 and IC 31–1–11.6–4 and 5. In his brief, Ronald does not challenge service of process.

proceedings, and we hold the same theory supports a court's assertion of jurisdiction in custody proceedings. Bodenheimer & Neeley–Kvarme, *supra*; "Developments in the Law: The Constitution and the Family," 93 Harv.L.Rev. 1156, 1246–48 (1980); *cf., Goldfarb v. Goldfarb,* (1980) 246 Ga. 24, 268 S.E.2d 648 (parent's continuous residency in forum state provides sufficient nexus to satisfy due process); *In re Appeal in Maricopa County,* (1976) 25 Ariz.App. 333, 543 P.2d 454 (personal jurisdiction over absent parent not required in proceedings for the termination of parental rights). We conclude the trial court's assertion of jurisdiction over the custody proceeding without obtaining *in personam* jurisdiction over Ronald did not violate his due process rights.

Affirmed.

PETRIE and REED, JJ., concur.