856 P.2d 290 (1993)
In the Matter of C.O. and J.O., alleged deprived children.
James OKUN and Norma Okun, Appellants,
v.
The STATE of Oklahoma, Appellee.
Nos. 79391, 79004.
Court of Appeals of Oklahoma, Division No. 3.
March 30, 1993.
Certiorari Denied June 22, 1993.
Mark Henricksen, Lanita Henricksen, El Reno, for appellants.
Nancy M. Shew, David L. Nimmo, Ada, for appellee.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 3.

*292 MEMORANDUM OPINION

HANSEN, Chief Judge:
Appellants, James and Norma Okun, (Father and Mother, or parents), seek review of the trial court's dispositional order which denied their motion for new trial and which ordered Appellants' children, C.O. and J.O., whom the court had adjudicated deprived, to remain in the temporary custody of the Department of Human Services (D.H.S.) for appropriate placement. The trial court assumed emergency jurisdiction over the children under 43 O.S. 1991, § 505(A)(3), finding that the parents had mentally abused the children, that the parents were unable to provide an emotionally stable home environment. The trial court further determined it was not in the children's best interest that the parents see or communicate with the children. On appeal, Appellants maintain the trial court did not have jurisdiction and the evidence did not support the deprived adjudication. We affirm.
On the night of November 6, 1991, the children and mother were riding in the family vehicle driven by Father in Pontotoc County, Oklahoma. Father intentionally rear-ended two vehicles in front of his vehicle, knocking one off the road. The drivers of the vehicles reported the incidents to police and the police arrested both Father and Mother at a convenience store in Ada. Father was arrested on two counts of Assault and Battery with a Dangerous Weapon and Mother was arrested for Obstructing an Officer in Performance of his Duty. C.O. and J.O., then nine years old and two years old, respectively, were in the back of the car during the attacks on top of piled-up belongings.
After their parents' arrests, the children were placed in the emergency custody of D.H.S. and a foster parent came to pick them up. C.O. told the investigating trooper that he had been physically and sexually abused for nine years and that J.O. had been abused for one year. C.O. explained the abuse in detail, charging his maternal grandmother, aunts and uncles with physical abuse. C.O. told the officer Father ran the two cars off the road because Father thought the abusers were in the cars and were trying to kill them.
During an inventory of the car, the officers found 143 cassette tapes containing notations such as "C.O.'s scissors", and "Sex with God" and "Murder" on them. Suspecting child abuse or child pornography, the trooper sought and obtained a search warrant of the car. The day after their parents' arrests, the trial court ordered C.O. and J.O. into temporary custody, based in part on the testimony of a child welfare worker. After reviewing several of the tapes, the district attorney's *293 office filed a petition on November 14, 1991, alleging C.O. and J.O. deprived children. Several of the tapes were admitted at trial during the adjudicatory hearing.
Appellants first challenge the trial court's jurisdiction. They assert the children are residents of Louisiana and that no emergency existed under 43 O.S. 1991, § 505(A)(3)(b). They also assert Louisiana is the only state with "minimum contacts", that under 42 U.S.C. § 675(5)(A)(C) the children should have been put in the "least restrictive setting", and that the trial court erred in failing to transfer the case to Louisiana.[1] Appellee maintains the trial court has jurisdiction under 43 O.S. 1991, § 505(A)(3)(b) and 10 O.S. 1991, § 1107(A)(1).
Section 504 of Title 43 of the Oklahoma Statutes defines "custody proceeding" as used in the Uniform Child Custody Jurisdiction Act (UCCJA) as including child neglect or dependency proceedings. Section 1101(4) of Title 10 defines "deprived. child" and states that the phrase "dependent and neglected" shall mean deprived. This proceeding to adjudicate C.O. and J.O. as deprived clearly falls within the provisions of the UCCJA. See In the Matter of A.S., 811 P.2d 910 (Okla. App. 1991).
Section 505 of Title 43 sets forth the jurisdictional prerequisites for a court in this state to hear child custody matters. This section contains four prerequisites: they are alternative, and if the requirements of any one of them are met, an Oklahoma court has jurisdiction. Holt v. District Court, 626 P.2d 1336 (Okla. 1981); In the Matter of the Guardianship of Walling, 727 P.2d 586 (Okla. 1986).[2] Appellees maintain the trial court had jurisdiction to hear this matter under subsection (A)(3)(b) of § 505. The subsection provides:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
3. The child is physically present in this state and:
b. it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; * * *
Subsection B of § 505 provides that physical presence alone of a child in this state is not by itself sufficient to confer jurisdiction.
Oklahoma has adopted a two-step approach to the assumption of jurisdiction for cases under the UCCJA. The first step is for the court to determine if it has jurisdiction. Next, the court must consider *294 whether it should exercise jurisdiction. Holt, at 1341; Magers v. Magers, 645 P.2d 1039 (Okla. App. 1982). Section 505 clearly empowers the court to assume jurisdiction where an emergency exists and a child may be endangered. Id., at 1040. The district court has the duty to take evidence on the issue of abuse to determine whether emergency jurisdiction is proper. Id. Under 10 O.S. 1991, § 1107(C), whenever a child is taken into custody as a deprived child without a court order, the officer taking the child into custody must immediately report such fact to the court. Within two judicial days following such detention, the court shall conduct a hearing to determine whether the child should remain in protective custody.
In the instant case, D.H.S. assumed custody of the children the night both parents were incarcerated. The evidence shows the children were non-residents and no relatives were available. The trial judge was informed of the fact of detention in the early morning hours of November 7, 1991, and issued a temporary custody order after a hearing that day. The evidence also shows Father and Mother believed relatives were in the two cars in Ada and were trying to kill them and that Father intentionally rear-ended the vehicles of two Oklahoma residents in Ada, with the children in the car, unbuckled and lying on top of piles of belongings. C.O. relayed tales to the foster parent and trooper of long-term, bizarre physical and sexual abuse, although never accusing his parents. There is no transcript in the appellate record of the hearing held on November 7, 1991, so we cannot determine whether the search warrant had been executed and the tapes admitted at this hearing. Regardless of whether the tapes were reviewed by the trial court at the November 7, 1991, hearing, we believe the evidence was quite sufficient to establish an "emergency" as that term is used in 43 O.S. 1991, § 505(A)(3)(b). Holt, 626 P.2d at 1345; Magers, 645 P.2d at 1041; Roberts v. District Court of Larimer County, 596 P.2d 65, 68 (Colo. 1979).
Having determined that the trial court had jurisdiction, we must determine whether the trial court erred in exercising such jurisdiction and erred in denying Appellants' motion to dismiss or transfer. Appellants actually filed two motions to dismiss or transfer. The first motion was filed on December 5, 1991, before the adjudicatory hearing, and attached only a Louisiana residential lease in support thereof. The second motion was filed on January 2, 1992, one day before the adjudicatory hearing, and attached a declaratory judgment from a district court of the State of Louisiana, wherein that court declared it was the preferable jurisdiction and was willing to hear the case and place the children in Louisiana foster care.
The policy considerations which the court must take into account when deciding whether to exercise jurisdiction are clearly set forth in 43 O.S. 1991, § 509. That section provides in toto:
A. A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
B. A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.
C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
1. If another state is or recently was the child's home state;
2. If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
3. If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;

*295 4. If the parties have agreed on another forum which is no less appropriate; and
5. If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 2 of this act.
D. Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.
E. If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.
F. The court may decline to exercise its jurisdiction under this act if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding.
G. If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.
H. Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact or, if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.
I. Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction, the court of this state shall inform the original court of this fact.
Both parties admit at the time jurisdiction was assumed by the Oklahoma court, the children were not the subject of any proceedings in any court in Louisiana. Although the parents had complained to the authorities in Louisiana that their children had been sexually abused by relatives in Louisiana, the Louisiana authorities had declined to prosecute the matter.[3]
Looking at the factors enumerated in subsection C to determine whether Oklahoma is an inconvenient forum, it appears that prior to the incidents in Ada, Louisiana is or was recently the children's home state. The evidence shows the family had driven to Chicago from Louisiana to visit Mother's older son sometime prior to the Ada incident. However, neither parent could adequately explain how they came to be in Oklahoma. The evidence shows they traveled to several states after leaving Chicago, supposedly trying to escape Mother's relatives who were chasing them, and that they ended up in Oklahoma by taking a "wrong turn". Louisiana probably had a "closer connection" as that phrase is used in Subsection (C)(2), to the children and the family, because that is where the family lived and the children attended school.
Under paragraph 3, the trial court should consider if substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state. *296 The parents argue that because most of the cassette tapes were made in Louisiana, that Louisiana has more evidence than Oklahoma. Regardless of where the tapes were made, the tapes themselves are evidence which was seized by the Oklahoma authorities pursuant to an Oklahoma search warrant during an investigation of the incidents in Ada. In addition, evidence of the parents' conduct regarding the safety (or lack thereof) of these children is located in this state. Evidence of the children's present emotional and mental states and relationships with their parents are located in this state.
Under paragraph 4, the parties had not agreed on another forum. Although the juvenile court of the parish of East Baton Rouge, Louisiana, issued an order declaring it to be the more appropriate forum, such an order, by itself, does not require the Oklahoma court to decline jurisdiction after it had already started proceedings. Nor have Appellants shown that the exercise of jurisdiction by an Oklahoma court would contravene any of the policies of the UCCJA as stated in 43 O.S. 1991, § 502. The parents also aver Oklahoma is an inconvenient forum because they live in Louisiana, which makes visitation difficult. This argument is without merit where, as in this case, the trial court has denied the parents any visitation until C.O. is ready to see his parents. The record indicates C.O. does not wish to see his parents.
The determination that it should decline jurisdiction because of "inconvenient forum" is discretionary with the trial court. Holt, 626 P.2d at 1341; G.S. v. Ewing, 786 P.2d 65 (Okla. 1990). The trial court has discretion to determine whether its exercise of jurisdiction is appropriate considering the best interests of the children involved. Id., at 72. After reviewing the record, we cannot say the trial court abused its discretion by exercising jurisdiction over the instant cause.
Next, Mother and Father maintain the evidence does not support the deprived adjudication. They say the deprived adjudication violates the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. Sec. 675(5)(A)(C). They maintain the tapes which were admitted into evidence at the adjudication hearing are not evidence of mental and emotional abuse, but show Appellants were using "scream therapy" to heal C.O.'s sexual abuse and were made by Appellants in practice of their religion of "Aesthetic Realism" They cite 10 O.S. 1991, § 1101(4) which provides in part:
No child who, in good faith, is being provided with treatment and care by spiritual means alone in accordance with the tenets and practice of a recognized church or religious denomination by a duly accredited practitioner thereof shall be considered, for that reason alone, to be a deprived child... ."
Appellants further argue there is no evidence that J.O. suffered emotional abuse and that a child less than two years of age, who cannot speak, is "incapable of suffering emotional abuse".
"Court supervision over the custody and welfare of children is equitable in nature, and the findings and judgment of the trial court will not be set aside unless clearly against the weight of the evidence." In the Matter of A.S., 811 P.2d 910 (Okla. App. 1991). In its adjudicatory order, the trial court found Father and Mother were not able to provide a physically safe environment for the children, there had been mental and emotional abuse of the children by the parents, and that the parents are unable to provide a stable home environment in the emotional and psychological sense. In its dispositional order, the trial court additionally found that the parents believe that their "treatment", which the court considers abusive, is doing some good for C.O. and that the children will continue to be subjected to such treatment.
With regard to Appellants' contention that Aesthetic Realism is a religion and that their treatment of the children is protected under 10 O.S. 1991, § 1101(4), we do not find evidence and Appellants have pointed to none, which would establish such practices as spiritual care in accordance with a recognized church or religion by a duly accredited practitioner as those terms are used in Section 1101. Father testified *297 Mother is an "aesthetic consultant" and referred to it as a "philosophy". Furthermore, the section provides that a court may not adjudicate a child deprived solely for religious reasons. Appellants have not shown the trial court's findings were based on this factor.
According to Father, after C.O. told his parents that he and J.O. had been sexually and physically abused by relatives, this triggered Mother's and Father's memories of similar abuse during their childhood. There is evidence that Father believes that he was forced to watch the abuse and murder of thousands of children by his own parents. Father and Mother believe both C.O. and J.O. have suffered sexual abuse and that in order for the children to overcome the "power" that these people have over them, the children must participate in reenacting such abuse with their parents. Although the trial court had ordered Father and Mother to undergo psychological evaluation, parents had failed to comply prior to the dispositional hearing.
Several cassette tapes were admitted at the dispositional hearing. Father testified these tapes were accurate representations of sessions the parents had with C.O. In the tapes, C.O. was forced to "recreate" with his parents incidents regarding the slashing of his penis with scissors, and someone putting scissors inside J.O.'s vagina. In several of the tapes, C.O. would scream and cry and ask his mother "not to do it" and tell her "you're scaring me". Father insists he and Mother have never sexually abused the children and C.O. has also denied any sexual abuse from his parents. The psychologist who has counseled C.O. since the beginning described parents' sessions with C.O. as "detrimental" and "traumatizing", and concluded the sessions which he listened to on the tapes constitute "extreme emotional abuse". In addition, the trial court had before it the reports of the Louisiana physicians who examined the children and the recommendations of the Foster Care Review Board.
It is clear from reading Father's testimony that he and Mother believe their "treatment" of C.O.'s alleged abuse is appropriate and that the techniques and language employed are appropriate for a ten-year-old. To find a child deprived, the trial court need not have concluded the children suffered emotional or mental abuse. Under 10 O.S. § 1101(4)(b), a deprived child means a child who does not have the proper parental care or guardianship or whose home is an unfit place for the child by reason of neglect, cruelty, or depravity on the part of his parents. The fact that the parents believe their treatment of the children is not abusive or neglectful does not prevent the court from finding the children deprived.[4] Aside from the evidence regarding mental and emotional abuse, there was evidence that Father intentionally rammed two cars on a highway outside of Ada because he mistakenly believed abusive relatives were in the car. Both children were in the car at the time. This evinces a total disregard for the physical safety of the children.
Appellants' final assignment of error that the tapes were unlawfully seized and therefore their rights under the Fourth Amendment to the United States Constitution were violated, was not presented to the trial court nor was it adequately briefed. It will not therefore be considered on appeal.
After reviewing the evidence in its entirety, we conclude the trial court's order is supported by clear and convincing evidence that the children, C.O. and J.O., are deprived. The judgment of the trial court is AFFIRMED.
BAILEY, P.J., and HUNTER, J., concur.
NOTES
[1] Section 675 of Title 42 of the United States Code defines terms as used in the federal statutes regarding Aid To Families With Dependent Children. Paragraph (5) defines "case review system" as a procedure to assure, among other things, that each child have a "case plan designed to achieve placement in the least restrictive (most family like) setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the child ..." Appellants have not shown how this section applies to C.O. and J.O. Nor have they presented argument or authority to support the alleged violation of such section. Furthermore, this argument was not presented to the trial court. Assignments of error which are not adequately briefed and which were not presented to the trial court, will not be considered on appeal. Wetsel v. Independent School District I-1, 670 P.2d 986 (Okla. 1983); In the Matter of N.L., 754 P.2d 863 (Okla. 1988).
[2] In their brief, Appellants maintain the trial court did not have jurisdiction over "the family" and that the children's due process rights were violated. A petitioner need not demonstrate minimum contacts under International Shoe v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) between a parent and the forum in custody proceedings under the UCCJA. Custody is in effect an adjudication of a child's status, which falls under the status exception of Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). See Hudson v. Hudson, 35 Wash. App. 822, 670 P.2d 287, 293 (1983). In Hudson, the Washington Court of Appeals concluded where a petitioner has complied with required notice provisions, the assumption of jurisdiction by a forum meeting the jurisdictional prerequisites of the UCCJA satisfies the `traditional notions of fair play and substantial justice' of Shaffer. Hudson, 670 P.2d at 294-295. Appellants have not pointed to any defects in notice. See also In the Matter of the Adoption of J.L.H. and J.P.H., 737 P.2d 915 (Okla. 1987); specifically page 919 and notes 11 and 13.
[3] Extensive physical and psychological evaluations performed on the children in Louisiana, indicate both children were physically healthy and that no signs of abuse as described by C.O. and the Mother were found. These examination reports were considered by the trial court at the adjudicatory hearing.
[4] In defining "abuse" as that term is used in 10 O.S. 1991, § 1130(A)(5)(a), the Oklahoma Supreme Court compared abuse as used in that section with "abuse" as used in the juvenile code. The Court found that unlike the criminal statutes, there is no mens rea requirement in the definition of abuse in Section 1130 and that "[P]arental intent is irrelevant to the suffering inflicted upon the child when that child is starved or tortured." In the Matter of S.T.G., 806 P.2d 636 (Okla. 1991). We find the same reasoning applicable here.