2012 OK CIV APP 40

**In the Matter of G.C., L.B., A.B., Alleged Deprived Children.**

**Drs. Greg and Deborah Saul, Husband and Wife, Appellants,**

v.

**The State of Oklahoma, Appellee.**

**No. 107,435.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 18, 2011.

Rehearing Dismissed March 15, 2012.

Julie M. Fulton, Stacey Wiebelt, Oklahoma City, Oklahoma, for Appellants.

David W. Prater, Oklahoma County District Attorney, Lori Dewey, John Joseph Dewey, Assistant District Attorneys, Oklahoma County, Oklahoma City, Oklahoma, for Appellee.

William R. McKinney, Assistant Public Defender, Oklahoma County, Oklahoma City, Oklahoma, for Minor Children.

JERRY L. GOODMAN, Presiding Judge.

¶ 1 Drs. Greg and Deborah Saul (collectively "Sauls") appeal from the trial court's January 3, 2010, order overruling the Sauls' objection to the State of Oklahoma, the Department of Human Services' (DHS), notice of removal of minor children from out-of-home placement.[1] Based upon our review of the facts and applicable law, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The minor children, LB, AB, and GC, were removed from their mother's care on September 26, 2008, when AB tested positive at birth for methamphetamine and amphetamines. The children were adjudicated deprived and placed in a shelter. LB and AB were ultimately placed in the Sauls' foster home on or about December 5, 2008. GC was placed in a shelter, a foster home, and subsequently a shelter where he remained until February 10, 2009, when he was placed

---

1. See footnote 4.

with Shannon Becktold (Becktold).[2] Becktold offered to take all three (3) children at this time. DHS did not transfer LB and AB to Becktold, however, because her current living situation could not accommodate three (3) children and GC's and LB's permanency plan was to reunify and transfer them to live with LB's father, John Bartley (Bartley), who was currently married to the mother.[3] Bartley resided in Mississippi with LB's siblings and GC and AB's half-siblings, DB and JB.

¶3 On July 9, 2009, DHS provided the Sauls with a notice of childrens' removal from out-of-home placement, providing LB and AB would be removed from their home on July 16, 2009, to be placed with GC in Becktold's home. The Sauls filed an objection on July 13, 2009. At the conclusion of the hearing on the Sauls' objection, the trial court issued its decision in court, finding the Sauls' objection should be denied and LB and AB should be removed and transferred to Becktold's home. The court stated:

The kids need to be together. And the foster family has to support the kids being together. Because through all this process of uncertainty, the only thing that we can give them, hopefully, is each other .... and I feel so sorry of the attachment [sic] that has grown between you and these children, that that is at risk. I am so sorry that you have had to go through this whole process. I am so sorry that DHS didn't come the first day and say, "Will you take all three kids?" And you could have decided then, one way or the other, and then have gone on. But instead, in their cumbersome, slow way, they place this beautiful child with you. And you became—and you fell in love with the child, like anybody would....

[I]n fact, it is consistent with the children's permanency plan for them all three to be together. And the Court does find that it is in the best interest of the children to be together in Ms. Becktold [sic].... [GC] is the most fragile child .... if you look at the counselor's report, states that he would be severely damaged if moved from the current placement.... It's in their best interest to be together, number one, first and foremost. That has been a plan that DHS has had.... And that [GC] is the most emotionally fragile of the children....

¶4 The Sauls appealed. While the appeal was pending, the Sauls filed a motion for emergency Interim Stay in the Oklahoma Supreme Court, which the Court granted on August 24, 2009. The order provides, in part:

[Sauls'] motion for emergency interim stay is granted for the purpose of maintaining status quo until further order of this Court. All parties are directed to file simultaneous briefs....

On December 7, 2009, the Supreme Court issued an order providing the interim stay was to remain in place pending the appeal or further order of the Court.

¶5 On April 23, 2010, while the appeal was pending before the Oklahoma Court of Civil Appeals (COCA), DHS removed LB and AB from the Sauls' home and placed them with GC in Becktold's home pending an investigation of sexual abuse of another minor by Greg Saul. The Sauls filed an objection to the notice of children's removal on April 27, 2010. DHS concluded their investigation and found

---

2. The Sauls and Becktold were deemed kinship foster parents by DHS. Becktold was deemed a kinship foster parent because her father dated the grandmother of the minor children. The Sauls were deemed kinship foster parents because of their relationship with AB's paternal grandparents. *See* 10A O.S.2009, § 1–1–105(40), which provides: " 'Kinship relation' or "kinship relationship" means relatives, stepparents, or other responsible adults who have a bond or tie with a child and/or to whom has been ascribed a family relationship role with the child's parents or the child...."

3. Bartley is GC's step-father. An Interstate Compact on the Placement of Children (ICPC) request was sent to Mississippi in October of 2008 for placement of LB and GC with Bartley. The ICPC was subsequently denied because Bartley was unemployed. A second ICPC request was issued on March 17, 2009, after Bartley became employed which was also denied.

GC's father is Sonny Lee Ennis. State is seeking to terminate Ennis' parental rights on the basis of abandonment.

The permanency plan for AB is adoption. Monty Stanton is AB's biological father. He relinquished his parental rights on May 14, 2008.

no abuse as to AB, LB, or GC. In addition, DHS concluded: "[T]he threat of harm as to Debora Saul is unsubstantiated. However, it is concerning that Ms. Saul was made aware of this incident shortly after AG left Oklahoma, but did not make a report to DHS as required." The record on appeal does not include DHS's specific conclusion as to Greg Saul's culpability. Moreover, the record does not include any of the documents filed by the parties or the trial court's orders issued while the appeal has been pending before this Court.

¶ 6 On July 19, 2010, Debora Saul, individually (hereinafter "Dr. Saul"), filed an amended objection to notice of child's removal.[4] DHS subsequently closed the Sauls' home as a foster home based upon their findings in the investigation. Dr. Saul filed a request for fair hearing of foster home closing.

¶ 7 On December 6, 2010, COCA issued a show cause order directing the parties to file a final appealable order or show cause why the appeal should not be dismissed as premature. An amended petition in error with a final appealable order was filed with the Court on January 3, 2011.

¶ 8 On December 14, 2010, however, the minor children's attorney filed a motion to dismiss the appeal, asserting the factual basis for the appeal had changed and had rendered the appeal moot. Dr. Saul responded, asserting the current appeal was not moot because her foster home remained open pending resolution of the fair hearing below. She further sought to strike or dismiss the motion to dismiss, asserting the motion failed to comply with Oklahoma Supreme Court Rules.

¶ 9 On February 10, 2011, the minor children's attorney filed an amended motion to dismiss the appeal, again asserting the appeal was moot. The motion states several review hearings had been held before the trial court where evidence was presented that the minor children were thriving in their current placement with Becktold, were bond-

ing with each other, and were confused about their visits with Dr. Saul. A Court Appointed Special Advocate (CASA) testified these visits even caused fear and regression in the minor children. The childrens' counselor also testified the visitations caused the children stress and their behavior was disruptive and defiant following visitations. He concluded the visits did not seem to be therapeutically beneficial to the children's stability and security. Dr. Saul responded, again asserting the appeal was not moot because her foster home remained open pending the resolution of the fair hearing below. Following a review hearing in October of 2011, the trial court ultimately canceled Dr. Saul's visitation with the minor children.

¶ 10 On February 24, 2011, this Court issued a show cause order directing the parties to respond to Dr. Saul's motion to strike or dismiss the minor children's motion to dismiss. The minor children's attorney responded, reiterating his prior assertions. On March 1, 2011, DHS also filed a motion to dismiss, asserting the appeal should be dismissed because the appeal was not expedited pursuant to the Children's Code.

¶ 11 On February 17, March 12, April 18, and May 11, 2011, an administrative hearing office held hearings on the closing of Dr. Saul's home as a foster home. An order affirming DHS's decision to close the home was issued on June 27, 2011. The order provides in part:

Ms. Saul's failure to report the suspected sexual intercourse in her home between her husband and sixteen year old AG is an inexcusable breach of contract. It indicates Ms. Saul placed her own need to be a foster parent above the needs of her foster children. She hid the event from [DHS], thereby exposing her foster children to the chaos of her home, the departure of Mr. Saul, and no doubt, her own emotional difficulties. Ms. Saul's breach of this contract provision (mandating reporting of

---

4. Dr. Saul's response notes she has filed for divorce from Greg Saul and is seeking return placement of the minor children individually. Though the record suggests the parties are seek-

ing divorce, no pleading amending Greg Saul as an appellant has been filed with this Court. Accordingly, he remains a party to the appeal.

"suspected abuse") is proven by clear and convincing evidence.

Dr. Saul has appealed the decision.

¶ 12 On October, 3, 2011, this Court issued another show cause order directing the parties to provide the Court with an update on the status of the events occurring in the trial court during the pendency of the appeal. The parties complied.

## STANDARD OF REVIEW

¶ 13 Court supervision over custody and welfare of children is equitable in nature, and the findings and judgment of the trial court will not be set aside unless clearly against the weight of the evidence. *In re D.R.*, 2001 OK CIV APP 21, ¶ 9, 20 P.3d 166, 167 (citing *In re C.O.*, 1993 OK CIV APP 64, ¶ 19, 856 P.2d 290, 296).

## ANALYSIS

¶ 14 Initially, this Court must address the contention that the current appeal should be dismissed as moot because of the actions and events occurring during the pendency of the appeal.

¶ 15 In the present case, the Oklahoma Supreme Court issued a stay directing the parties to preserve the status quo pending appeal.[5] Dr. Saul asserts DHS removed the minor children from her home in direct contravention to the stay. Neither DHS nor the minor children's attorney have responded to Dr. Saul's assertion. Rather, they assert the factual basis for this appeal has changed and rendered the appeal moot and that the best interests of the minor children direct that the children should remain in their cur-

rent placement with Becktold. After our review of the after-occurring events, we agree with DHS and the minor children's attorney that the current appeal is moot and should be dismissed.[6]

¶ 16 Ordinarily, if a motion for stay is granted, the stay remains in effect until the stay is dissolved or pending final disposition of the appeal. The effect of a stay pending appellate review is preventive in nature. The stay preserves the status quo pending appellate review and generally suspends the power of the lower court to issue or modify orders.

¶ 17 In the present case, the Oklahoma Supreme Court issued the stay, intending custody of the minor children remain with Dr. Saul pending appeal. Pursuant to applicable case and statutory law, however, a trial court retains jurisdiction during the pendency of an appeal to issue or modify an order in the best interest of a deprived child. The district court's continuing authority over children adjudicated deprived is implicit in the scheme of the Children's Code. "Custody orders are entered and periodically reviewed by the court guided by the 'best interest of the child' standard." *State ex rel. Dept. of Human Services v. Colclazier*, 1997 OK 134, ¶ 10, 950 P.2d 824, 828.

Any decree or order made pursuant to the provisions of the Oklahoma Children's Code may be modified by the court at any time; provided, however, that an order terminating parental rights shall not be modified.

10A O.S.2001 and Supp. 2009, § 1-4-814. The paramount consideration in all proceed-

5. 12 O.S.2001 and Supp. 2009, § 990.4(C) provides both the trial and appellate court may stay or suspend, pending appeal, the enforcement of any provision in a judgment, decree or final order in a juvenile matter; Rule 1.15, Rules of the Supreme Court of Oklahoma, 12 O.S.2001, Ch.15, App. 1.

6. While appellate scrutiny is generally confined strictly to the record of proceedings below, a well-recognized exception allows an appellate tribunal to consider only those after-occurring facts, transpiring during the pendency of an appeal, which adversely affect the reviewing court's capacity to administer effective relief. *See Lawrence v. Cleveland County Home Loan Auth.*, 1981

OK 28, 626 P.2d 314; *Brown Investment Co. v. Hickox*, 1962 OK 61, 369 P.2d 807; *Carlton v. State Farm Mutual Automobile Ins. Co.*, 1957 OK 75, 309 P.2d 286. By affidavit attached to a dismissal motion the movant may apprise this Court of any material midappeal development that affects the Court's cognizance of the case. *Tulsa Tribune v. Oklahoma Tax Com'n, Okl.*, 1989 OK 13, 768 P.2d 891 (Opala, V.C.J., dissenting). In the present case, counsel for DHS and the minor children tendered extra-record facts solely for the purpose of providing support for their motions to dismiss the appeal for mootness by affidavit attached to the dismissal motions.

ings concerning a child, whether a custody matter or deprived proceeding, is always the health, safety, and best interest of the minor child. 10A O.S.2009, § 1-1-102.

> Courts have a duty to guard with jealous care the interest of minors and to protect infants' rights. The state also has an interest in a child's welfare and a responsibility to protect a child's interest. Under the Oklahoma Children's Code, the paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health, safety and best interest of the child. [*See* 10 O.S.2001, § 7001-1.2] The purposes of laws relating to deprived children are to secure the permanency, care, health, safety and welfare of children and to preserve family ties whenever possible.

*Skrapka v. Bonner*, 2008 OK 30, ¶ 17, 187 P.3d 202, 210–11.

¶ 18 Furthermore, nothing contained in the Children's Code shall prevent a court from immediately assuming custody of a child and ordering whatever action may be necessary to protect the children's health, safety, or welfare. 10A O.S. Supp.2009, § 1-4-207. Once jurisdiction has been obtained over a child who is or is alleged to be deprived, the trial court may issue any temporary order or grant any interlocutory relief authorized by the Code in an emergency. 10A O.S. Supp. 2009, § 1-4-101(A)(2).

¶ 19 In *Kahre v. Kahre*, 1995 OK 133, 916 P.2d 1355, the Oklahoma Supreme Court addressed a trial court's power to change custody orders during an appeal. Notably, the Oklahoma Supreme Court had issued a stay, providing enforcement of the trial court's order awarding custody of the parties' minor children to the mother was stayed pending the appeal. While the appeal was pending, however, the father repeatedly violated the trial court's orders and absconded with the children, resulting in the trial court entering an order placing custody of the children with the mother.

¶ 20 On appeal, the Court rejected an argument that the trial court exceeded its jurisdiction, stating nothing in its order staying the trial court's permanent custody order pending appeal prohibited the trial court

from entering interim orders made in the best interest of the children. *Id.* at ¶ 49, at 1365. See *Jones v. Jones*, 1980 OK 85, 612 P.2d 266 (any necessary change in custody is deemed ancillary to the appeal and "lies within the concurrent and coordinate cognizance of the district court.") Admittedly *Kahre* involved a custody matter; nevertheless, we find it analogous and applicable in the instant matter.

 ¶ 21 While a trial court retains limited authority pending appeal pursuant to the Children's Code to modify or enter an interim order made in the best interest of the minor children, DHS most certainly does not retain such authority and may not act in direct violation of a Supreme Court stay. Such prohibition is not absolute, however. If an emergency situation concerning the minor children occurs in which the best interest of the children is no longer served by observing the stay, DHS's actions in violating the stay may be deemed necessary, and thus not subject to sanction. If this situation occurs, DHS shall notify the Supreme Court, the trial court, and all parties of the emergency and its' proposed actions at least contemporaneous with, if not prior to, such violation as well as establish that its' actions are done in furtherance of the limited purpose of protecting the minor children's best interest.

¶ 22 Accordingly, after thoroughly reviewing the record in this case, we find the record supports DHS's actions in removing the minor children from the Sauls' home and that the current appeal is moot and should be dismissed. An emergency situation had clearly arisen requiring a change in placement pending appeal, *i.e.,* an investigation of sexual abuse by Greg Saul of another minor in the home. In addition, the record on appeal provides Dr. Saul's home has been closed as a foster resource and it is in the best interest of the minor children that they remain in Becktold's placement.

 ¶ 23 Nevertheless, we note DHS failed to notify the Court that an emergency had occurred and that it was acting in contravention to the stay. Such action is unacceptable. DHS's failure to notify the Court of its' actions until required to do so by show

cause order resulted in this Court's expenditure of unnecessary and wasted resources and a delay in resolving the appeal. In the future, such impermissible conduct by DHS will result in sanctions.[7]

¶ 24 **STAY DISSOLVED, APPEAL DISMISSED.**

RAPP, J., concurs.

THORNBRUGH, J., concurs specially.

THORNBRUGH, J., specially concurring.

¶ 1 I concur with the majority opinion but write separately to emphasize that DHS's actions in this case were indefensible and warrant sanctions. I would impose sanctions on DHS at this time.

---

7. Dr. Saul's Motion to Strike and/or Motion to Dismiss is denied.