[No. 17356-5-II.   Division Two.   June 14, 1995.]

*In re the Marriage of* MARIANNE KASTANAS, *Respondent, and* ILIAS KASTANAS, *Petitioner.*

---

*Barton Louis Adams, Adams & Adams,* for petitioner.
*Sherry Clark Peterson,* for respondent.

HOUGHTON, J. — Ilias Kastanas appeals from a trial court ruling establishing Washington jurisdiction over a child custody matter. We reverse.

## FACTS

Ilias Kastanas is a professor at California State University in Los Angeles, California. He has resided in California since 1975. His family lives in Greece. While the record is unclear, he may maintain dual citizenship in Greece and the United States.

Marianne Kastanas was born and reared in Tacoma. She lived in Tacoma until her 1973 graduation from high school. She obtained her Masters in Business Administration from California State University in 1988. Her mother and two brothers continue to live in Tacoma.

The Kastanases met in California and were married in Nevada in March 1991. They lived in California, where their child, LK, was born on September 6, 1992.

On January 22, 1993, Marianne Kastanas left California with LK and returned to Tacoma. She filed a dissolution and custody action in Pierce County Superior Court on January 27, 1993. Ilias Kastanas was personally served in California with the Washington summons and petition for dissolution on February 3, 1993. On February 13, he flew to Washington, met with his wife, and convinced her to return to California to attempt a reconciliation. Ilias, Marianne, and LK returned to California on February 15, 1993.

According to Marianne Kastanas, the attempted reconciliation began to fail within two weeks. Ilias Kastanas states that he filed his response to the Washington petition for dissolution as a "formality" on April 6, 1993.

During the two months (late February to late April) following their return to California, Marianne Kastanas alleges she became aware of further troubling facts regarding Ilias Kastanas. She returned to Washington on April 24, 1993. She attests that she did so "because [she] was fearful for [her] safety [sic] and [LK]'s".

On May 3, 1993, Ilias Kastanas moved for an ex parte order in California superior court, requiring Marianne Kastanas to show cause why Ilias Kastanas should not be given custody of LK, and for a temporary restraining order under California's Domestic Violence Prevention and Uniform Parentage Act. An order was granted requiring Marianne Kastanas to appear in Los Angeles on May 24, 1993 (later extended to June 18) with LK. According to California Commissioner Wegman, the order is based upon an allegation of wrongful taking of the minor child out of the jurisdiction of the State of California.

Prior to the California hearing, and after an unsuccessful attempt to obtain a temporary restraining order in Washington, Marianne Kastanas was granted such an order on June 4, 1993. She served Ilias Kastanas by mail. Ilias Kastanas appeared for the hearing by his attorney and raised an objection to the commissioner's jurisdiction. The hearing was continued to June 22, 1993. In the interim, Ilias Kastanas was personally served in Washington on June 17, 1993, with an amended summons and petition in Marianne Kastanas' original dissolution action.

On June 18, the California action was stayed by Commissioner Wegman, pending a discussion with Washington State Superior Court Commissioner Boyle. The two commissioners held a telephone conference on the morning of June 21, 1993. That afternoon, Commissioner Wegman held a hearing, with both parties' California counsel present.

During that hearing, Commissioner Wegman described the subject matter of the two commissioners' discussion. Commissioner Boyle said he was inclined to decline jurisdiction, but was very concerned about serious allegations raised by Marianne Kastanas. Commissioner Wegman then told Commissioner Boyle that Washington could perhaps take jurisdiction under the "emergency" clause of the Uniform Child Custody Jurisdiction Act (UCCJA), but Commissioner Boyle remained skeptical. Commissioner Wegman further asserted, and Commissioner Boyle agreed, that even if Washington could take emergency jurisdiction, California was clearly the "home state" under the UCCJA, so conflicting jurisdiction would exist. Commissioner Wegman concluded that when such conflicts exist, the federal Parental Kidnapping Prevention Act of 1980 (PKPA) preempts the UCCJA, and the home state takes jurisdiction.

At a hearing held the following day, Commissioner Boyle determined that Washington did not have jurisdiction. He first noted that he had spoken with Commissioner Wegman and discussed the case "at length". He then

declined jurisdiction and instructed Marianne Kastanas' attorney to contact Child Protective Services in California "to make an evaluation in this case". He refused to stay his order or continue the restraining order against Ilias Kastanas.

Marianne Kastanas then brought a motion for revision by a superior court judge, which was heard on July 2, 1993. The judge also held a telephone conference with Commissioner Wegman, and after hearing argument, entered findings of fact and conclusions of law, revising Commissioner Boyle's ruling, and asserting jurisdiction in Washington. Specifically, the court found that: (1) Washington has jurisdiction under RCW 26.27.030(1)(b); and (2) the PKPA does not apply "because there is no conflicting custody order nor dissolution action in another state".

## Analysis

Ilias Kastanas contends that the trial court erred in concluding that this state has jurisdiction. He asserts that under the PKPA, which pre-empts the UCCJA in such cases, Washington should decline jurisdiction. We agree.

■■ The determination of subject matter jurisdiction is a question of law, reviewed de novo. *See Joy v. Kaiser Aluminum & Chem. Corp.,* 62 Wn. App. 909, 816 P.2d 90 (1991). Initially, we note that:

> [t]he PKPA should be considered whenever the court is asked to determine which of two or more states has jurisdiction to decide a custody dispute.

*In re Marriage of Greenlaw & Smith,* 123 Wn.2d 593, 604, 869 P.2d 1024, *cert. denied,* 115 S. Ct. 333 (1994) (*citing In re Thorensen,* 46 Wn. App. 493, 497, 730 P.2d 1380 (1987) ("When there are conflicts between the [UCCJA and PKPA], the PKPA preempts state law under the supremacy clause; therefore, questions of jurisdiction arising in

interstate custody matters must *first* be decided by reference to the PKPA" (emphasis added))).[1]

The relevant portions of the PKPA read as follows:

(a) The appropriate authorities of every State shall enforce according to its terms . . . any child custody determination made consistently with the provisions of this section by a court of another State.

(b) As used in this section, the term—

. . . .

(3) "custody determination" means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders . . . ;

(4) "home State" means the State in which, immediately preceding the time involved, the child lived with his parents, [or] a parent . . . for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period; . . . .

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II)

---

[1]In fairness to the trial court in this case, its decision was rendered prior to the Supreme Court's decision in *Greenlaw.*

there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; . . ..

. . ..

(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child. . . ..

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 U.S.C.A. § 1738A, Pub. L. § 8(a), 94 Stat. 3569 (1980).

Washington cannot take jurisdiction consistent with the PKPA. *See In re Marriage of Ieronimakis,* 66 Wn. App. 83, 831 P.2d 172, *review denied,* 120 Wn.2d 1006 (1992). The parties agree that at the time Marianne Kastanas filed her initial papers in Washington and Ilias Kastanas filed his in California, California was LK's home state.[2] As a result, no child custody determination regarding LK made

_____

[2]LK was born in California on September 6, 1992. She resided in California with her parents for 4.5 months, until Marianne brought LK to Washington, for the first time, on January 22, 1993. Two days later, Marianne filed for dissolution and custody. At that time, under 28 U.S.C. § 1738A(b)(4), "in the case of a child less than six months old, the State in which the child lived from birth with" her parents, California, was LK's home state. Moreover, LK was only temporarily absent from California from January 22 to February 15. They continued to reside in California beyond March 2, 1993, when LK was 6 months

by a Washington court could be consistent with the PKPA, under 28 U.S.C. § 1728A(c)(2)(A-E). These subsections establish an irrebuttable presumption for home state jurisdiction because the alternative jurisdictional provisions, subparagraphs (B), (D), and (E), are each made contingent on the absence of a home state under subparagraph (A).

Moreover, California's presumptive jurisdiction was not affected by Marianne Kastanas' attempt to invoke Washington's jurisdiction. Under 28 U.S.C. § 1738(g), only pending proceedings consistent with the PKPA bar assumption of jurisdiction in another court. Therefore, at the time Ilias Kastanas filed his temporary restraining order and order to show cause, any prior attempt to invoke the jurisdiction of the Washington courts was invalid.[3]

Marianne Kastanas does not directly address the PKPA. Instead, she contends that because no *custody proceeding* is pending in California, we must remand for a determination of jurisdiction under RCW 26.27. This argument is incorrect.

■ Under 28 U.S.C. § 1738A(b)(3), "custody determination" is defined to include "temporary orders, and initial orders". Ilias Kastanas obtained a temporary restraining order and an initial order to show cause regarding custody, in California, on May 3, 1992. Therefore, a custody determination was pending in LK's home state at the time of the Washington trial court ruling.[4]

Simply put, application of the PKPA preempts Wash-

old, until April 24, 1993, when Marianne again brought LK to Washington. Thus, when Ilias filed his temporary custody order on May 3, 1993, the only consecutive six month period LK could have spent anywhere was spent in California.

[3]We note the Washington commissioner expressed concern for LK's well-being, and instructed Marianne Kastanas' counsel to inform California's Child Protective Services regarding the circumstances of this case. We too are concerned by the serious nature of the allegations against Ilias Kastanas, and in reinstating the commissioner's determination, we also reiterate this instruction to counsel. Of course, there is no reason to believe the California courts are any less capable of or willing to protect LK's best interests.

[4]An argument could be constructed that the California court's staying of its proceedings meant it declined to exercise its jurisdiction, thereby bringing 28 U.S.C. § 1738A(c)(2)(D)(i) into play. That provision requires, however, that the California court have declined to exercise jurisdiction "on the ground that the State

ington's version of the UCCJA and results in Washington's not having jurisdiction. This analysis is consistent with precedent in Washington and other jurisdictions. *See, e.g., Greenlaw,* 123 Wn.2d at 604 (recognizing preemption by PKPA, but distinguishing between jurisdiction to modify (at issue there) and conflict of original jurisdiction (at issue here)); *Ieronimakis,* 66 Wn. App. at 92 n.10 (recognizing and enforcing home state priority in factually similar setting); *Steadman v. Steadman,* 36 Wn. App. 77, 671 P.2d 808 (1983) (because no parental kidnapping was involved, did not apply PKPA); *Hudson v. Hudson,* 35 Wn. App. 822, 670 P.2d 287 (1983) (applying home state priority, without applying PKPA, because no parental kidnapping occurred); *Atkins v. Atkins,* 308 Ark. 1, 823 S.W.2d 816, 819 (1992) (case substantially on point, recognizing "that the PKPA gives *exclusive jurisdiction* to the child's *home state"*, even where conflicting jurisdiction may exist under UCCJA); *In the Matter of B.B.R.,* 566 A.2d 1032 (App. D.C. 1989) (recognizing exclusive jurisdiction of home state under PKPA, but finding no state to be the home state); *Sams v. Boston,* 181 W. Va. 706, 384 S.E.2d 151, 158-62, 6 A.L.R. 5th 1033 (1989) (recognizing that (a) the purposes of both PKPA and UCCJA are to deter "child snatching" and jurisdictional conflicts, (b) the home state takes priority, and (c) periods of concealment should extend home state jurisdiction "for a reasonable period of time").

Based upon the foregoing analysis, we hold that the trial court had jurisdiction to determine its own jurisdiction, but should have applied the PKPA in making that determination. Because the home state priority in the PKPA clearly applies, the trial court erred in revising the commissioner's decision.

█ In his reply brief, Ilias Kastanas seeks attorney fees on appeal, urging several grounds. One of these grounds, RCW 4.28.185(5), which allows attorney fees to prevailing

whose jurisdiction is in issue is the more appropriate forum". Commissioner Wegman made it crystal clear, however, that he was not and would not decline jurisdiction on that ground. Therefore, this subsection cannot apply.

out-of-state defendants, could have been raised in his opening brief, thus affording Marianne Kastanas an opportunity to respond. Because it was not, we will not consider this ground. *See In re Marriage of Sacco*, 114 Wn.2d 1, 784 P.2d 1266 (1990) (denying attorney fees on any grounds when first requested in reply brief). The other grounds are RCW 4.84.185, frivolous actions, and CR 11. To the extent these claims are directed to the initial filing below, they were not raised below and are not, therefore, preserved for our review. To the extent the frivolous action argument is directed to this appeal, the obvious difficulty with that claim is that Marianne Kastanas is the *respondent*, so nothing she could say in her response could constitute a "frivolous appeal". The final ground, CR 11 sanctions against counsel, also fails. To the extent it arises from the responsive brief filed in this court, the proper ground would be RAP 10.7, or possibly RAP 18.9, but Ilias Kastanas has failed to comply with RAP 18.1(c), and we do not find the briefing in this complex area of preemption without basis so as to require sanctions. We therefore deny the requests for attorney fees.

Reversed.

MORGAN, J., and ALEXANDER, J. Pro Tem., concur.