488

*In the Matter of the Marriage of* CASSANDRA CAGE
MURPHY, *Appellant,* and KENNETH MICHAEL MURPHY,
*Respondent.*

490

*Lisa L. Dow*, for appellant.

*Edward F. Shea, Jr.*, of *Shea, Kuffel & Klashke*, for respondent.

KURTZ, J. — When deciding whether to recognize and

enforce a custody order entered in another state, Washington courts must consider both the Uniform Child Custody Jurisdiction Act (UCCJA), RCW 26.27, and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A. The trial court dismissed Cassandra Cage Murphy's petition finding that all matters related to the dissolution of her marriage to Kenneth M. Murphy, including custody issues, had been resolved by a consent decree entered in Ohio. The trial court based its decision on the UCCJA and a stipulation included in the Ohio decree that consented to jurisdiction. We conclude the trial court erred in applying the UCCJA standards to this matter without conducting an analysis under the PKPA. For that reason, we reverse and remand the matter to the trial court for further proceedings.

## FACTS

Cassandra Cage Murphy and Kenneth Michael Murphy were married in Rock Springs, Wyoming, in August 1993. They are the parents of two children, Lacee Murphy, born on January 13, 1988, and Colt Cage, born on April 25, 1990.

In her affidavit, Ms. Cage Murphy states that the family lived in Wyoming until March 1994, when they moved to Tucson, Arizona. While there, Mr. Murphy abandoned the family on April 25, 1994. Ms. Cage Murphy and the children then returned to Rock Springs, Wyoming, and lived there from June 1994 until June 1995, when they moved to Washington. According to Ms. Cage Murphy, the children have been in Washington since June 1995; this is substantiated by Department of Health and Human Services records. Mr. Murphy concedes Ohio has never been the home state of the children.

On March 1, 1996, Mr. Murphy commenced a dissolution proceeding in the Court of Common Pleas of Union County, Ohio, seeking dissolution of the marriage, a division of property and debts, and the establishment of his parental rights and responsibilities with respect to the children. Ms.

Cage Murphy retained an attorney in Ohio and filed a motion to dismiss Mr. Murphy's complaint insofar as it requested the court to make determinations of parental rights. Ms. Cage Murphy argued in her motion that Ohio was not the children's home state and, therefore, the Ohio court lacked jurisdiction under Ohio law. While the record is unclear, it appears that this motion was denied without a hearing on May 8.

Noting the "implicit overruling" of the motion to dismiss, Ms. Cage Murphy then filed an answer in the Ohio court. Trial in the matter was set for June 3. On May 21, Ms. Cage Murphy filed a motion for a continuance on the basis that she, along with her children and other witnesses, would need to travel to Ohio from Washington to take part in court proceedings. This request was denied on May 24. On that same date, Ms. Cage Murphy filed a petition for dissolution in Benton County, Washington, and requested custody of her children. Ms. Cage Murphy also obtained an ex parte restraining order against her husband. In her proposed parenting plan, Ms. Cage Murphy requested that Mr. Murphy's residential time with their children be restricted based on allegations of spousal abuse.

On June 3, Ms. Cage Murphy, accompanied by her Ohio attorney, appeared in the Ohio court and entered into an agreement resolving all issues related to the dissolution proceedings, including those related to the rights and responsibilities concerning the children. In the agreed divorce decree, Ms. Cage Murphy is designated as the residential parent and the legal custodian of the children. Mr. Murphy is granted extensive visitation rights. The agreement also contains a stipulation consenting to jurisdiction in Ohio. Ms. Cage Murphy contends that she entered this agreement under duress and that she believed that if she refused to accept the agreement, she would lose custody of the children.

After the hearing in Ohio, Ms. Cage Murphy filed a flurry of affidavits in the Benton County Superior Court in an attempt to convince the Washington court to retain jurisdic-

tion. The trial court in Washington issued an order dismissing the petition for dissolution of marriage based upon the UCCJA, the stipulation entered in the Ohio action, and the fact that the Ohio action was filed first. On appeal, Ms. Cage Murphy contends the trial court erred by declining to exercise jurisdiction over this custody matter.

## ANALYSIS

■ The trial court determined that the issues related to the custody of the Cage Murphy children were resolved by the Ohio decree and that the Washington courts must recognize and enforce this decree pursuant to the full faith and credit provisions of the UCCJA. The trial court's decision to decline jurisdiction in this matter presents an issue of law that we review de novo. *Bour v. Johnson,* 80 Wn. App. 643, 647, 910 P.2d 548 (1996).

■ The PKPA establishes the conditions under which a state must give full faith and credit to the custody orders of another state. It provides:

> The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

28 U.S.C.A. § 1738A(a) (West 1994). The PKPA, likewise, establishes the conditions under which a state must refrain from exercising jurisdiction over a child custody proceeding when a proceeding in the same matter is pending in another state. It provides:

> A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 U.S.C.A. § 1738A(g). Both sections use the phrase "con-

sistently with the provisions of this section." Only those orders that meet this requirement qualify for the PKPA's operative effect.

A child custody determination is consistent with the provisions of the PKPA if two requirements are met. First, under section 1738A(c)(1), the court issuing the order must have jurisdiction under its own state laws. Jurisdiction in each state is determined by reference to the UCCJA as adopted in that state. *In re Marriage of Greenlaw*, 123 Wn.2d 593, 598, 869 P.2d 1024 (1994). Second, one of five conditions enumerated in section 1738A(c)(2) must be met. They are:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

28 U.S.C.A. § 1738A(c)(2). These conditions are modeled after the jurisdictional standards of the UCCJA.

 There is one significant difference between the UCCJA and PKPA. Unlike the UCCJA, the PKPA grants priority to home state jurisdiction over significant connections jurisdiction. First priority is given in subsection (A) to the child's home state. If no state has jurisdiction under the "home state" provision, a state may take jurisdiction under subsection (B) on the grounds that it has significant connections with the child and at least one parent. Subsections (C) and (D) state other independent grounds for obtaining jurisdiction that are not applicable in this case. To the extent there are conflicts between the UCCJA and PKPA, the PKPA preempts state law under the supremacy clause. *In re Marriage of Kastanas*, 78 Wn. App. 193, 197, 896 P.2d 726 (1995).

"Home state" is defined in the PKPA and the UCCJA as the state in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months. 28 U.S.C.A. § 1738A(b)(4); OHIO REV. CODE ANN. § 3109.21(E) (Banks-Baldwin 1997); RCW 26.27.020(5). Significantly, under the structure of the PKPA, if any state qualifies as the "home state," the orders of any other state attempting to exercise significant connections jurisdiction over the same custody matter will not be entitled to full faith and credit. The custody order entered in the second state would not be consistent with the "home state" priority granted in the PKPA and, therefore, would not qualify as an exercise of jurisdiction consistent with the provisions of the PKPA. *Greenlaw*, 123 Wn.2d at 603.

 We turn first to an examination of the decree entered in the Ohio court to determine whether the issuing court had jurisdiction under Ohio law as required under

section 1738A(c)(1). Mr. Murphy's primary argument is that Ohio acquired jurisdiction by virtue of the stipulation entered in the Ohio action. We disagree. Whether or not Ohio had jurisdiction over this custody matter is a question of subject matter jurisdiction determined by reference to the UCCJA as adopted in Ohio. This statute either confers or does not confer jurisdiction. The UCCJA does not confer jurisdiction based upon parental consent. Moreover, subject matter jurisdiction is not acquired by agreement or stipulation. *Wampler v. Wampler*, 25 Wn.2d 258, 267, 170 P.2d 316 (1946); *Rust v. Western Wash. State College*, 11 Wn. App. 410, 418-19, 523 P.2d 204, *review denied*, 84 Wn.2d 1008 (1974). It follows that Ms. Cage Murphy's stipulation to jurisdiction is not binding if lack of subject matter jurisdiction is shown. *Baird v. Baird*, 6 Wn. App. 587, 589, 494 P.2d 1387 (1972).

Ms. Cage Murphy challenges the jurisdiction of the Ohio court on different grounds. She contends that the PKPA is a jurisdictional statute that preempts state law, grants exclusive subject matter jurisdiction to the home state, and establishes national standards for conferring subject matter jurisdiction over custody disputes. As a result, Ms. Cage Murphy believes that the Washington courts were free to exercise jurisdiction over this custody matter because the Ohio court lacked subject matter jurisdiction under the PKPA as Ohio was not the children's home state.

■ We do not agree that the PKPA establishes national standards for conferring subject matter jurisdiction over state custody proceedings and, consequently, we disagree that the PKPA gives the home state exclusive jurisdiction. The PKPA is a full faith and credit statute. The PKPA applies only to the enforcement or modification of an existing custody decree or when a custody action is already pending in another state. If a custody decree does not already exist, or there is no custody action pending in another state, the federal act has no application. *Thompson v. Thompson*, 484 U.S. 174, 181-83, 108 S. Ct. 513, 98 L. Ed. 2d 512 (1988). For this reason, Ms. Cage Murphy cannot use the PKPA to

displace Ohio's jurisdiction over the initial custody determination because at the time the original custody petition was filed, no other custody action was pending. Hence, Ohio's jurisdiction over this custody matter is determined by reference to its state law or, specifically, the UCCJA as adopted in Ohio. *See Columb v. Columb*, 161 Vt. 103, 108, 633 A.2d 689, 692 (1993).

Ms. Cage Murphy also challenges the jurisdiction of the Ohio court under Ohio law. She contends the Ohio court exercised jurisdiction under the significant contacts provision of the UCCJA, even though her children had little or no contacts with Ohio. Because Ohio lacked jurisdiction under its own laws, she maintains the custody order entered in Ohio was not entitled to full faith and credit pursuant to the PKPA. In response, Mr. Murphy points out that Ms. Cage Murphy filed a motion to dismiss in Ohio and challenged the jurisdiction of the Ohio court based on the lack of contact with the children. Mr. Murphy argues that Ms. Cage Murphy was afforded a full and fair opportunity to litigate this issue in Ohio, lost, and did not appeal. Relying upon the Ohio custody decree and the doctrine of res judicata, he asserts Ms. Cage Murphy cannot relitigate in Washington any of the issues resolved as part of the custody proceeding in Ohio.

 Both the UCCJA and the PKPA address the issue of whether a judgment by one court is binding on another state court and authorize an inquiry by the second state into the jurisdiction of the first state. RCW 26.27.130; 28 U.S.C.A. § 1738A(c)(1); *Kastanas*, 78 Wn. App. at 198-200. This is not unique to interstate child custody disputes. As a general rule, any court, when asked to give effect to the judgment of a court in another state, may inquire into that court's jurisdiction notwithstanding the full faith and credit clause. *Thompson v. Whitman*, 85 U.S. 457, 469, 21 L. Ed. 897 (1873); *In re Estate of Stein*, 78 Wn. App. 251, 261, 896 P.2d 740 (1995), *review denied*, 128 Wn.2d 1014 (1996); *In re Estate of Wagner*, 50 Wn. App. 162, 166, 748 P.2d 639 (1987). However, when the second court's inquiry

"discloses that those [jurisdictional] questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment," the second court is precluded from reexamining the jurisdiction of the court rendering the original judgment. *Durfee v. Duke*, 375 U.S. 106, 111, 84 S. Ct. 242, 11 L. Ed. 2d 186 (1963). Principles of res judicata attach to the jurisdictional ruling and prevent relitigation. *Williams v. North Carolina*, 325 U.S. 226, 230, 65 S. Ct. 1092, 89 L. Ed. 2d 1577, 157 A.L.R. 1366 (1945).

In essence, Mr. Murphy contends that the doctrine of collateral estoppel applies here and precludes the relitigation of the issue as to whether the Ohio court had jurisdiction under Ohio law. For the doctrine of collateral estoppel to apply, it must be shown that the issue to be precluded was actually litigated and necessarily determined in the prior action. *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987). To this end, the Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question. *Neff v. Allstate Ins. Co.*, 70 Wn. App. 796, 801, 855 P.2d 1223 (1993), *review denied*, 123 Wn.2d 1004 (1994). The party seeking the application of the doctrine of collateral estoppel has the burden of proof. *Id.* at 799.

Any ruling made by the Ohio court concerning its jurisdiction over this custody matter is documented here only by references in the final custody decree to the Ohio custody jurisdictional statute and Ms. Cage Murphy's stipulation to jurisdiction. The record before us is devoid of any findings of fact, conclusions of law or court order entered in Ohio from which this court can determine upon what basis the Ohio court assumed jurisdiction. Based on this record, it is impossible to determine whether the jurisdictional issue was fully and fairly litigated, and finally decided.

We conclude this matter should be remanded to the trial court. If the trial court finds that the issue of whether the Ohio court had jurisdiction over this custody matter was

indeed fully and fairly litigated in Ohio, Ms. Cage Murphy may not relitigate this issue in Washington. However, if Mr. Murphy cannot show that this jurisdictional question was fully and fairly litigated in Ohio, the trial court must conduct its own inquiry and determine whether the Ohio court had jurisdiction over this matter under Ohio law.

A determination as to whether or not the Ohio court had jurisdiction under Ohio law to decide issues related to the custody of the Cage Murphy children addresses only one of the two requirements that must be established before the Ohio order is entitled to full faith and credit under the PKPA. To be consistent with the PKPA, a custody order must also meet one of the five conditions enumerated in subsection (c)(2) of 28 U.S.C.A. § 1738(A). Ms. Cage Murphy contends that Ohio exercised jurisdiction over her children on the grounds that it had significant connections with them, which is authorized by subsection (B) of the PKPA, at a time when Washington had jurisdiction under the "home state" provision or subsection (A) of the PKPA. Because the PKPA grants priority to home state jurisdiction over significant connections jurisdiction, Ms. Cage Murphy contends the Ohio custody decree is not a custody order that is consistent with the provisions of the PKPA and the Washington courts need not recognize or enforce the order entered in Ohio. Significantly, Mr. Murphy concedes Ohio was not the home state of the children at the time his petition was filed.

■ The PKPA unequivocally limits a state's obligation to give full faith and credit to custody orders that are consistent with the PKPA. It has been said: "the Federal PKP Act makes it judicially imprudent for a state court in one state to exercise jurisdiction to enter an initial custody decree when a state court in another state has 'home-state' jurisdiction and has not declined to exercise that jurisdiction; if conflicting decrees were issued, only the custody decree of the 'home-state' court would be entitled to full faith and credit under the Federal PKP Act." *Sandra M. v. Jeremy M.*, 197 W. Va. 542, 476 S.E.2d 213, 218 (1996)

(quoting *Sams v. Boston*, 181 W. Va. 706, 712, 384 S.E.2d 151, 6 A.L.R.5TH 1033 (1989)). We agree, and encourage the trial courts to consider the possibility of future litigation whenever they make custody determinations with interstate implications based solely on jurisdiction under the UCCJA. Where the child has interstate connections, the trial court would be well advised to include in its order a determination as to the existence and identity of the child's home state even though this finding is not required under the UCCJA.

In adopting the PKPA and prioritizing home state jurisdiction, Congress recognized that the interests of children are generally best served if custody litigation occurs in the home state. The home state is the place where children are most likely to have significant ties to family, friends, neighbors, schools, and social services. Courts in the home state have easy access to these contacts and services when undertaking the difficult job of assigning and monitoring issues related to child custody. Where it can be determined, the home state forum is the forum selected for all of the right reasons, not because it is somehow beneficial or convenient for the adult litigants.

The incomplete record before us raises the possibility that Washington was the children's home state at the time Mr. Murphy filed his petition in Ohio. We remand this matter to the trial court to make a determination as to the home state of the Cage Murphy children. If it is determined that Washington was the home state of the Cage Murphy children at the time the Ohio custody petition was filed, Washington need not recognize and enforce the Ohio custody order even if it is established that the Ohio court had significant connections jurisdiction under Ohio law.

Accordingly, we reverse the order of the trial court and remand this matter for further proceedings pursuant to the PKPA and the UCCJA. Specifically, upon remand, the court shall determine whether the Ohio custody order is consistent with the PKPA and therefore entitled to full faith and credit by the Washington courts.

SCHULTHEIS, C.J., and BROWN, J., concur.