[No. 21845-7-III.   Division Three.   January 15, 2004.]

*In the Matter of the Marriage of* DENA MARIE HAMILTON, *Respondent*, and GEORGE HURLEY HAMILTON, *Appellant*.

*Alan J. Tindell*, for appellant.

*Michael R. Pickett* (of *Pickett & Dow, Attorneys at Law, L.L.P.*), for respondent.

KURTZ, J. — Under Washington's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27

RCW, Washington courts have subject matter jurisdiction to determine child custody in certain specified situations. Those situations include that in which the child has no home state as defined in the UCCJEA, the child and at least one parent have a significant connection to Washington, and substantial evidence concerning the child's care is available in Washington. RCW 26.27.201(1)(b). In this appeal, George Hamilton contends the superior court erred when it determined that these factors were present and allowed the court to assume jurisdiction in a dissolution petition that his wife, Dena Hamilton, filed in Benton County. He contends that Texas is the home state of their minor child and that the court could not consider Washington connections generated by Dena Hamilton after she removed the child from their home in Texas. We affirm.

George and Dena Hamilton were married in Oregon on August 13, 1993. Their son, Casey, was born in Utah on September 20, 1994. George completed his college degree requirements and obtained his teacher's certification while the couple lived in Utah and Idaho. In August 1997, the family moved to Austin, Texas, where George found employment as a teacher. He held three different teaching positions in three different Texas school districts from 1997 to 2001. Dena and Casey did not move with George to the city where his third teaching position was located. They remained behind, ostensibly to sell the family home. On November 14, 2001, Dena left Texas with Casey and moved to Richland, Washington, where her parents resided. She did not inform George that she had left him until after the fact.

Casey is a special needs child with multiple diagnoses, including depression/mood swings, aggression, anxiety, obsessive compulsive disorder, oppositional defiant disorder, and enuresis. Although Casey apparently received treatment for these disorders while in Texas, he received intensive treatment, including two hospitalizations, after Dena relocated to Washington. He had no health insurance in place when he left Texas; his health care expenses in

Washington have been paid for by Medicaid. Casey also completed first grade in Washington.

George and Dena made some attempts to work out their differences during the winter of 2001 to 2002. George visited Washington on at least two occasions to see Casey and talk to Dena. But on April 16, 2002, Dena filed a petition for dissolution in Benton County. The petition incorrectly alleged the court had jurisdiction over the parties' child because Washington had been the child's home state "for at least six consecutive months immediately preceding the commencement of this proceeding." Clerk's Papers (CP) at 182. She served the petition on George in Texas on May 29, 2002. George then filed a petition for dissolution in Kleberg County, Texas, on June 10, 2002. On June 14, he appeared in the Benton County action, and on June 20, he moved to dismiss on the ground the court did not have jurisdiction over the child under the UCCJEA, chapter 26.27 RCW.

The UCCJEA[1] is consistent with 28 U.S.C. § 1738A, the Parental Kidnapping Prevention Act of 1980 (PKPA), which gives full faith and credit to custody determinations by state courts when made in accordance with its requirements. These statutes provide, as follows:

(1) A child's home state is the state where the child has lived with a parent for six months before the commencement of the child custody proceeding. 28 U.S.C. § 1738A(b)(4); RCW 26.27.201(1)(a).

(2) A state is also considered the child's home state if that state had been the child's home state at some point within six months of commencement of the proceeding. 28 U.S.C. § 1738A(c)(2)(A); RCW 26.27.201(1)(a).

---

[1] In deciding the petition, the superior court commissioner cited to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJA). That act was repealed in 2001 by the legislature, which enacted the UCCJEA in its place. The pertinent provision of the UCCJEA is RCW 26.27.201, which is quoted at footnote 2 of this opinion. For purposes of George and Dena's custody dispute, the differences in the UCCJA and the UCCJEA are material in distinguishing a case decided under the repealed act and relied upon by George. See In re Marriage of Ieronimakis, 66 Wn. App. 83, 92, 831 P.2d 172 (1992).

(3) If a child has no home state as defined in the statutes, then a court may assume jurisdiction if the child and his or her parent has significant connections, other than mere physical presence, with the state; and substantial evidence is available in the state concerning the child's care, protection, training, and relationships. RCW 26.27.201(1)(b). The federal act recognizes the assumption of jurisdiction in that situation. 28 U.S.C. § 1738A(c)(2)(B).

(4) Finally, if the home state has declined jurisdiction on the ground that another state is the more appropriate forum to determine custody, then that other state may assume jurisdiction. RCW 26.27.201(1)(c). The federal statute recognizes the assumption of jurisdiction in that situation, as well. 28 U.S.C. § 1738A(c)(2)(D).[2]

---

[2] The federal statute, 28 U.S.C. § 1738A, provides that:

(a) [t]he *appropriate authorities* of every State *shall enforce . . . any* [*child*] *custody determination . . . made consistently with the provisions of this section* by a court of another State.

(b) *As used in this section, the term—*

. . . .

(4) *"home State" means the State in which, immediately preceding the time involved, the child lived . . . for at least six consecutive months* . . . .

. . . .

(c) *A child custody determination* made by a court of a State *is consistent with the provisions of this section only if—*

(1) such court has jurisdiction under the law of such State; and

(2) *one of the following conditions is met:*

(A) *such State (i) is the home State of the child* on the date of the commencement of the proceeding, *or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal* or retention by a contestant or for other reasons, and a contestant continues to live in the State;

(B)(i) *it appears that no other State would have jurisdiction under subparagraph (A),* and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) . . . the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

. . . .

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or *another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more*

In a memorandum opinion dated October 4, 2002, a Benton County superior court commissioner considered George's motion to dismiss Dena's petition for lack of jurisdiction in the matter of Casey's custody. The court stated that it had "conferred with Judge Martin Chiuminatto of Kleberg County Texas." CP at 33. And, "[t]he court in Texas has suspended taking further action until the issue of jurisdiction is resolved." CP at 33. The Benton County court then went on to hold that jurisdiction of the matter was properly in Washington. It reasoned, as follows:

> At the time of filing in the state of Washington, the petitioner and minor child had resided here for five months which is one month shy of establishing Washington as the home state of the minor child. *Were this matter originally filed in the state of Texas [in] June . . . 2002, the court in Texas would have declined jurisdiction because [by June] the petitioner and child would have already established Washington as the home state.* The parties had a somewhat transitory lifestyle while in Texas.

*appropriate forum to determine the custody . . . of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction . . . .*
(Emphasis added.)

RCW 26.27.201(1) of the UCCJEA provides as follows:

*[A] court of this state has jurisdiction* to make an initial child custody determination *only if*:

(a) *This state is the home state of the child* on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent . . . continues to live in this state;

(b) *A court of another state does not have jurisdiction under (a) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum* under RCW 26.27.261 or 26.27.271, *and*:

(i) The child and the child's parents, or *the child and at least one parent . . . have a significant connection with this state other than mere physical presence; and*

(ii) *Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships*;

(c) All courts having jurisdiction under (a) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under RCW 26.27.261 or 26.27.271 . . . .
(Emphasis added.)

The mother and child have now resided in the state of Washington for almost one year and the child is currently enrolled in school and receiving services in the state of Washington. At this time, the child's most significant contacts are with the state of Washington rather than the State of Texas.

CP at 33-34 (emphasis added).[3]

On February 6, 2003, the court commissioner filed written findings and conclusions and order regarding subject matter jurisdiction. They include the following findings:

18. *The child has no home state under [former] RCW 26.27.030(1)(a)(i) or [former] RCW 26.27.030(1)(a)(ii)*[4] since the inception of the Benton County action the child had not resided in the State of Washington for six months and at the inception of the action in Texas the child had resided outside the State of Texas for a period of time in excess of six months.

19. The Benton County Superior Court in and for the State of Washington conferred with the court in Kleberg County, Texas to discuss the issue of jurisdiction. *It was agreed that the State of Washington should have jurisdiction in this matter.*

20. The mother had resided in the State of Washington from Sept., 1972 to 1979 as a child; from July, 1992 through Aug., 1993 as a student and from November, 2001 to the present time with the minor child.

21. *The child has significant contacts with the State of Washington*, which would make jurisdiction proper under [former] RCW 26.27.030(1)(b).

CP at 275 (emphasis added). The court concluded it "has jurisdiction over the child because the child's most significant contacts are now with the State of Washington and not Texas, under [former] RCW 26.27.030(1)(b)." CP at 276. It also concluded that "[t]he *Parental Kidnaping* [sic] *Prevention Act*, 28 U.S.C.S. Sec. 1738A et seq *does not apply to this*

---

[3] A judge of the Benton County Superior Court denied George's motion for revision of the commissioner's decision.

[4] As noted in footnote 1 of this opinion, the commissioner cited to the repealed UCCJA.

*action*." CP at 276 (emphasis added). The court therefore denied George's motion to dismiss for lack of subject matter jurisdiction over the minor child.

On February 27, 2003, the court entered a decree of dissolution and final parenting plan. It did not divide the couple's property or set child support because it did not have personal jurisdiction over George.

George now appeals. The issue is whether the superior court correctly determined it had jurisdiction to determine Casey's custody. George argues it did not. He asserts that the court erroneously held that the PKPA did not apply. And, if the trial court had applied the PKPA, it would have had to decline jurisdiction because Dena commenced the Washington action less than six months after she moved with Casey to Washington. George further argued that Casey's contacts with Washington were not relevant because Texas was still Casey's home state at that point in time. In the alternative, he argues that Casey's postarrival contacts with Washington are insufficient to warrant jurisdiction. George reasons that to allow Washington courts to assume jurisdiction because the parent who removed the child from the home state has generated significant contacts in Washington is against public policy.

Because the provisions of the UCCJEA are consistent with those of the PKPA, George is not benefited by his argument that the court erred when it concluded that the PKPA did not apply to Dena's petition. Specifically, Texas was not Casey's home state under the definition of "home state" in the UCCJEA or in the PKPA. Casey had not lived in Texas for six consecutive months before George commenced his action in Texas in June 2002. RCW 26.27.201(1)-(a); 28 U.S.C. § 1738A(b)(4). Nor was Texas his home state at any time within those six months. RCW 26.27.201(1)(a); 28 U.S.C. § 1738A(c)(2)(A). Likewise, Washington was not Casey's home state. He had resided in Washington for only five months when Dena commenced this action.

■ Since Casey did not have a home state, the Washington court's assumption of jurisdiction under RCW 26.27.201-(1)(b)(i) and (ii) was proper if he and Dena had a significant connection with Washington and if substantial evidence were available in Washington concerning his care, protection, training, and personal relationships.

George's claim to the contrary, the record supports the court's assumption of jurisdiction under the cited statute. Dena had lived in Washington for seven years as a child, and Washington was her residence for one year (1992-1993) while she was a college student. The record also indicates that George had not provided Casey with health insurance in Texas, that Casey is now covered by Medicaid in Washington, and that he has received extensive medical treatment in Washington.

Dena's declaration filed in opposition to George's motion to dismiss supports the court's finding that Casey has a significant connection with Washington due to his treatment here, and that substantial evidence exists in this state that is relevant to his custody status. She states, as follows:

> 2. . . . Attachment B is a list of [Casey's] various disorders and diagnosis. . . . Casey is currently being treated by his pediatrician Dr. Ronald Wojnas. He is also being treated by a psychiatrist Dr. Pe at Lourdes Health Network. Attachment C set[s] forth [h]is medical psychiatric providers. Casey was hospitalized from December 6 through December 18, 2001 and again from January 7 through the 14th of 2002, for "rages." He is required to have his medications monitored on a regular basis by his meds nurse . . . under the hospices [sic] of Dr. Pe. Casey visits Dr. Pe approximately once per month. Barrie Bristow is the case manager at Lourdes who coordinates various activities and programs for Casey Hamilton. She also counsels me as to how to handle Casey's multiplicity of disabilities. Attachment B also indicates the various medications Casey is required to take each day. In addition to his pediatrician Dr. Ronald Wojnas and his psychiatrist Dr. Pe he also regularly attends counseling with B. J. Olsen at Lourdes Mental Health Center in Richland, Washington. He has counseling sessions once a week. He has also been diagnosed by Dr.

Daniel Stowens, a pediatric neurologist and receives contact from Michael Gage Lockhart, an in home family therapist. For a period of once per week Michael Gage Lockhart counseled Casey and myself in our home in an attempt to coordinate treatment of Casey's disabilities. Casey is qualified for SSI due to his disabilities.

3. Casey has not treated with any doctors or therapists in San Antonio, Texas, since August of 2001. Medical treatment stopped . . . because George Hamilton did not get medical insurance for the family. Medical insurance did not start again until I moved to Washington State and received Medicaid.

CP at 79-80.

George cites *In re Marriage of Ieronimakis*, 66 Wn. App. 83, 92, 831 P.2d 172 (1992) in support of the proposition that the court will not consider a child's postremoval contacts with a state. There, the mother, an American citizen, left her home in Greece with her two children one day when the father was at work. She flew with the children to her parents' home in Seattle and brought an action for dissolution of her marriage within one week of her arrival. The father then commenced a child custody proceeding in Greece. The Greek court awarded custody to the father. Subsequently, the superior court in Washington awarded custody to the mother, who testified that the children had by that point lived in the United States for two years and had no contact with their father for the last seven or eight months.

On appeal, the court held that "[s]ince Washington is clearly not the home state, jurisdiction must be found on the alternative bases of jurisdiction set forth in [former] RCW 26.27.030." *Ieronimakis*, 66 Wn. App. at 92. The court stated that "[t]o allow Washington courts to assert jurisdiction because [the mother] generated significant contacts with the state is in effect telling any abducting parent that if you can stay away from the home state long enough to generate new considerations and new evidence, that is a sufficient reason for the new state to assert a right to adjudicate the issue. Such a holding circumvents the intent of the jurisdiction laws." *Id.*

*Ieronimakis* is distinguishable. The legislature repealed the Uniform Child Custody Jurisdiction Act (UCCJA) in 2001, before Dena removed Casey from Texas, and replaced it with the UCCJEA.[5] The language of the UCCJEA is consistent with that of the PKPA, 28 U.S.C. § 1738A, which "prioritizes 'home state' jurisdiction by requiring that full faith and credit *cannot* be given to a child custody determination by a State that exercises initial jurisdiction as a 'significant connection state' when there is a 'home State.' " UNIFORM CHILD CUSTODY JURISDICTION & ENFORCEMENT ACT, 9 U.L.A. 650 (1999); *see also In re Marriage of Murphy*, 90 Wn. App. 488, 495, 500, 952 P.2d 624 (1998) (In adopting the PKPA, Congress prioritized home state jurisdiction.).

In contrast, the UCCJA, which was in place at the time *Ieronimakis* was decided, allowed the court to look at "significant connections" with Washington *even if another state was the home state of the child*, as the court in *Ieronimakis* determined that Greece was.[6] *Ieronimakis*, 66 Wn. App. at 90 n.7; former RCW 26.27.030 (1979). It was this provision that the court in *Ieronimakis* viewed from the perspective of public policy. It held that a parent could not escape the jurisdiction of a home state by abducting the child and keeping the child in another state long enough to generate significant contacts.

Under the present statute, RCW 26.27.201(1)(b), the court looks at "significant connections" with Washington *only if the child has no home state or the home state has declined jurisdiction* on the ground that Washington is the more appropriate forum. Here, Casey had no home state because he had not resided in Washington for six months by the time Dena commenced this action and George waited

---

[5] RCW 26.27.921, a transitional provision for the UCCJEA, provides that "[a] motion or other request for relief made in a child custody proceeding or to enforce a child custody determination that was commenced before July 22, 2001, is governed by the law in effect at the time the motion or other request was made." All of the events of the custody dispute here occurred after July 22, 2001.

[6] The former act was based upon the uniform law proposed in 1968 by the National Conference of Commissioners on Uniform State Laws. *See* UNIFORM CHILD CUSTODY JURISDICTION & ENFORCEMENT ACT, 9 U.L.A. *Preface at* III. The present act is based upon a uniform law proposed in 1997 by the same group. *Id.* at 649-50.

more than six months after Casey left to file his action for custody in Texas. The superior court appropriately considered contacts Casey generated in Washington after Dena removed him from Texas because Texas was no longer the home state. And, the court's consideration of Casey's Washington contacts did not circumvent the intent of the jurisdiction laws to prioritize home state jurisdiction.

We therefore hold the superior court had jurisdiction to determine Casey's custody under RCW 26.27.201(1)(b).[7]

The court grants Dena's request for costs and attorney fees on appeal, pursuant to RCW 26.09.140. She has supported her financial need for such an award in an affidavit filed in this court before oral argument. George has not filed an affidavit and, therefore, has not established that he lacks the ability to pay Dena's costs and attorney fees. The matter is therefore referred to our court commissioner for a determination of the amount of the award. RAP 18.1.

Affirmed.

BROWN, C.J., and SWEENEY, J., concur.

---

[7] George also argues that the superior court erred when it found that Texas had declined jurisdiction during a phone conversation the commissioner had with the Texas judge. He asserts the record does not contain any evidence that Texas had declined jurisdiction in a contested hearing, as required under the UCCJEA. *See* RCW 26.27.261. However, whether the Texas court did so was not the material basis for the superior court's written findings and conclusions that it had jurisdiction. The superior court based its assumption of jurisdiction on its finding that Casey had no home state under the UCCJEA. Since we have held that the superior court was correct, we need not decide whether the court's finding that Texas had declined jurisdiction must be supported by documentation from Texas.